[No. D005046. Fourth Dist., Div. One. July 26, 1988.]

WESTINGHOUSE BEVERAGE GROUP, INC., Plaintiff and Respondent, v.
COUNTY OF SAN DIEGO, Defendant and Appellant.

**COUNSEL**

Lloyd M. Harmon, Jr., County Counsel, Barbara Baird and Susan J. Boyle, Deputy County Counsel, for Defendant and Appellant.

Poindexter & Doutre, William M. Poindexter, James P. Drummy and Carol Reichstetter for Plaintiff and Respondent.

**OPINION**

**WORK, J.—** ▮▮▮ In this case we hold a manufacturer and wholesaler of soft drink products, Westinghouse Beverage Group, Inc., doing business as Seven-Up Bottling Companies of Southern California (7-Up), may be assessed San Diego County property taxes on its reusable containers in the possession of its wholesale customers on the lien date, in which it supplies carbon dioxide ($O_2$) gas and those in which it transports the syrup which, when mixed with the $CO_2$, becomes a carbonated beverage which in

turn is retailed by 7-Up's customers. For the following reasons, we conclude 7-Up's stainless steel returnable containers are neither exempt from property tax by virtue of the business inventory exemption stated in Revenue and Taxation Code sections 129 and 219[1] nor as returnable "containers used to package soft drink beverages" which are assessable only to the person in possession on the taxable lien date pursuant to section 996, subdivisions (a) and (c).

## RELEVANT FACTS

7-Up sued the County of San Diego for return of property taxes assessed on containers of $CO_2$ and containers of syrup which were in the possession of its wholesale customers on the lien date. These containers are not sold to the wholesaler. The syrup container is valued at $20 to $25 and the $CO_2$ container at $60. 7-Up receives no deposit for the syrup canister and only a $25 deposit on its $CO_2$ containers. For accounting purposes, 7-Up does not treat the exchange of the containers as a sale. 7-Up does not include the $25 deposit received for the $CO_2$ container in its sales account; it is not seen as a profit item; rather the $25 is marked in the liability account when it is received and marked in the cash account when it is paid out for returned containers. 7-Up does not distinguish between containers that are at the retailers versus ones at its facilities, but designates them all as depreciating assets. The sales invoice to the retailer lists the charges for the syrup and the $CO_2$ separately from the deposit for the $CO_2$ container. If the retailer orders the same number of refilled $CO_2$ containers as empty ones he is returning, no cash is exchanged for the $CO_2$ containers.

Further, 7-Up collects no sales tax from its customer for the containers. Although the items 7-Up's customer purchases for resale are at wholesale and do not involve sales taxes, these containers are not intended to be resold and, in the absence of any indicia of a title transfer from 7-Up to its customer, remain the property of 7-Up while in the possession of its customer.

### *The Taxed Containers Are Not Exempt Business Inventory*

■ Section 129 states in part: " 'Business inventories' shall include goods intended for sale or lease in the ordinary course of business and shall include raw materials and work in process with respect to such goods. . . . 'Business inventories' shall not include any goods actually leased or rented on the lien date nor shall 'business inventories' include business machinery or equipment or office furniture, machines or equipment, except when such property is held for sale or lease in the ordinary course of business."

---

[1] All statutory references are to the Revenue and Taxation Code.

Prior to the 1980 revision of section 219, California partially taxed business inventory. The business inventory tax was criticized for discouraging manufacturers from locating in California and creating tax inequities between various types of businesses. (See Bagley & Azevedo, *Tax Reform— 1970* (1971) 2 Pacific L.J. 56, 81-84.) Section 219 now states: "For the 1980-81 fiscal year and fiscal years thereafter, business inventories are exempt from taxation and the assessor shall not assess business inventories."

Unlike the situation with returnable bottles which are sold by the retailer and not within either the retailer's or manufacturer's control to insure return, 7-Up easily retains control over the syrup and $CO_2$ containers. When a salesperson takes refill orders from the retailers, he can ask them to check if they have any empty tanks. The containers are all labeled with 7-Up's name to ensure the deliverymen do not pick up containers from other companies. About 80 to 90 percent of the containers are, in fact, returned. Approximately 75 percent of the containers are located at the retailers, whereas only 25 percent are located at 7-Up's facilities at any given time. It is, in fact, this control which makes it economically feasible for 7-Up to take only $25 in deposits on two containers worth $85, the return of which is indispensable to its continued profitable marketing of these soft drink components.

In contrast, the cost of bottles containing completed soft drink beverages and the bottles themselves are passed on to the ultimate consumer. These bottles leave the control of the retailer and the manufacturer. Thus, the bottles are truly "goods intended for sale . . . ." (§ 129.) In contrast, the syrup and $CO_2$ containers are only passed to retailers, are very durable, are subject to retrieval by the soft drink manufacturer's salesperson and most containers are in fact returned. Thus, these containers are not intended for sale within the meaning of the statute. Additionally, unlike soft drink bottles, no deposit is collected on syrup canisters and $CO_2$ containers deposits are significantly less than cost. Commercial reality compels our conclusion 7-Up does not relinquish title to the containers.

*Neither the Syrup nor $CO_2$ Containers Are Tax-exempt as Returnable Containers Packaging Soft Drink Beverages*

Section 996, subdivision (a) permits assessment of returnable containers only to the person in possession on the lien date.[2] However, section 996 exempts only containers used to package soft drink beverages. A "beverage" is commonly defined as "any of various liquid refreshments, usually

---

[2] Although not decided by the superior court, the appellate briefs strenuously argue whether a customer in possession of 7-Up's containers has an enforceable duty to return them. (§ 996, subd. (a).) We do not address this issue, because it is irrelevant to our decision.

excluding water." (The American Heritage Dict. (New College ed. 1976) p. 128.) $CO_2$ is a gas insofar as relevant to the issue we address. A gas is not a liquid, and certainly not a beverage. The syrup packaged in 7-Up's containers is not intended to be imbibed in its packaged state, and, although arguably not harmful if taken, not shown to be palatable and certainly not shown to qualify as a "refreshment." (§ 996, subd. (a).)

The judgment is reversed.

Kremer, P. J., concurred.

**BENKE, J.,** Dissenting.—Section 996 governs taxes on containers, not soft drink beverages. Indeed, in enacting section 996, the Legislature specifically found:

"Sec. 2. This act codifies the proper assessment procedures followed in a majority of the counties, and the Legislature finds that it is necessary to correct the improper procedures followed in other counties, *in order that returnable soft drink containers will be assessed and taxed fairly and uniformly throughout the state.*" (Stats. 1973, ch. 1044, § 2, p. 2069; italics added.)

Given the returnable nature of the container here, and in light of the trial court's unchallenged finding that the $CO_2$ and syrup at issue have no function other than as parts of a potable whole, I do not believe the uniformity desired by the Legislature would be fostered by allowing a tax on 7-Up's containers while exempting similar containers where the components have been premixed.

I would affirm the judgment.